No. 16,161.

## TOMBLER v. REITZ.

PROMISSORY NOTE.—*Endorsement.*—*Nature of.*—*Parol Evidence.*—In an action by the payee against the maker of a promissory note, the plaintiff may show by parol evidence that the endorsement of the name of a third person thereon, made at the time of its execution, was made as a witness to the transaction and not as endorser of the note, where the question is in issue.

MARRIED WOMAN.—*Suretyship.*—The statute prohibiting the suretyship of married women was enacted for the protection of their rights and property, and not for the purpose of depriving creditors who are without fault, of the means of collecting what is honestly due them.

From the Vanderburgh Circuit Court.

*J. E. Iglehart* and *E. Taylor*, for appellant.

*T. E. Garvin*, *G. C. Cunningham* and *D. B. Kumler*, for appellee.

HOWARD, J.—This was a suit for the foreclosure of a mortgage on real estate, brought by appellee against appellant.

Appellant filed her answer to the complaint in five paragraphs, to the third of which a demurrer was sustained.

Appellee replied in two paragraphs, to the second of which a demurrer was overruled.

There was a trial by the court, special findings of fact, and conclusions of law. Appellant excepted to the conclusions of law, moved for judgment on the findings, and for a new trial, both of which motions were overruled, and judgment entered for appellee.

Appellant has assigned numerous errors, but discusses only one—the overruling of the motion for a new trial.

The facts, as found by the court, are as follows:

1. On or about the 25th day of August, 1886, appellant personally applied to appellee for a loan of $4,000,

and offered appellee as security for the loan a mortgage on the real estate described in the complaint.

2. At that time, and at the time of the execution of the notes and mortgage hereinafter mentioned, appellant was a married woman, and wife of Edward Tombler, who, since the execution of the mortgage, and before the bringing of this suit, departed this life.

3. At the time appellant applied for said loan, she stated and represented personally to appellee that she desired to borrow said sum of $4,000 for the purpose of reinvesting the same in Minnesota, in her own name, and in a home for herself in that State.

4. Appellee believed, and relied on, said statements and representations made by her, and agreed to make said loan to her for the purpose of enabling her to buy in her own name a home for herself in Minnesota, and for no other purpose, and appellant stated no other object or purpose for or of said loan.

5. Appellant negotiated said loan with appellee in Evansville, Indiana, herself; her then living husband, Edward Tombler, at that time was in the State of Minnesota, and had not been in Evansville for eight months prior to the first day of September, 1886, and had nothing to do with the negotiations or procurement of said loan, except to join in the execution of the notes and mortgage as the husband of appellant.

6. On the 1st day of September, 1886, appellee made said loan to appellant, and took and accepted from appellant her four notes, executed by her and her husband, as evidence of such loan, and took and accepted from her, as security for the payment of said notes, a mortgage on the real estate in the complaint described, which at that time, and now is, the separate real estate of appellant. Said mortgage was executed and acknowledged by appellant and her said then living husband, and was

Tombler *v.* Reitz.

delivered by appellant to appellee, who, within forty-five days thereafter, caused it to be recorded in the office of the recorder of Vanderburgh county, Indiana. Said four notes were all dated September 1st, 1886, and were executed to the order of appellee, and made payable in one, two, three, and four years after date, respectively, with interest at 7 per cent. per annum.

7. Said notes and mortgage were executed by appellant; and her then living husband executed said notes and mortgage for the sole purpose of enabling appellant to procure said loan in order to buy a home in her own name in Minnesota. Appellant herself procured said notes and mortgage to be prepared and written.

8. Appellee, in making said loan to appellant, made it solely and exclusively on the faith and strength of the statements and representations of appellant, that she desired to use the money so borrowed for the purpose of investing it in her own name in a home in Minnesota.

9. Appellee would not have made said loan to appellant, and would not have accepted said notes and mortgage from her, had it not been for the representations and statements made by her that she desired the money so loaned to her to re-invest in her own name in a home in Minnesota.

10. The money so loaned to appellant, and for which said mortgage was executed as security, was paid by appellee to appellant.

11. Appellant, subsequently to the execution by her of said notes and mortgage, took up and paid off one-half of said loan—that is, the note which became due in one year after date, and the note which became due in two years after date, together with the interest on said two notes, and also paid the interest on the said two notes in suit up to the 1st day of September, 1889. The principal and interest paid on account of said loan was paid by

appellant out of her own money, and with her full knowledge and consent.

12. Appellant executed and delivered said notes and mortgage, and made said loan for her own use and benefit, and not for the use and benefit of her husband, or any other person, and not as security of her husband, or of any other person.

13. One Frank Hopkins, who is the brother of appellant, wrote his name on the back of said notes at the time the money was paid by appellee to appellant, and at the time appellant delivered said notes and mortgage to appellee, not as an endorser, and not as surety, but as a witness to the transaction.

14. Said Frank Hopkins was not the surety or endorser on said notes, nor the joint maker thereof with appellant; he was and is in no way liable to appellee for the payment of said notes, or either of them, or any part thereof.

· The court further finds the amount due and to become due by appellant to appellee, and that the same is a lien by said mortgage on the real estate of appellant, described in the complaint and mortgage; and finds, as conclusions of law, that appellee is entitled to judgment against appellant, and to the foreclosure of said mortgage.

Appellant names twenty-one reasons in her motion for a new trial, but argues only one of these in her brief, being the twentieth:

"Twentieth. The court erred in permitting the plaintiff, Reitz, to testify on said trial, over the objection of the defendant, as to the agreement between the plaintiff and Frank Hopkins as to the latter putting his name on the back of the note, and as to the understanding on that subject."

Appellant's defense in the trial court was, that at the item of incurring the debt she was a married woman;

that the loan was made, not for her own use, but for that of her husband; that she had executed the notes and mortgage as the surety of her husband; and that appellee had relied for his security, not upon her mortgage, but upon the endorsement of her brother, Frank Hopkins.

Appellee replied to this defense by general denial, and also by setting up an estoppel against appellant, alleging that the loan was made to appellant solely on her representations that the money was for her own use and for her individual purposes, and not for the use of her husband or for any other purpose; that the application for said loan and said representations were made by appellant personally and in the absence of her husband, who was then living in the state of Minnesota; that appellee believed said statements and representations to be true, and that he made said loan on the faith thereof and would not otherwise have made it; that, at the time the appellant applied for said loan, appellee inquired of her concerning the purpose for which she wanted the same, and told her that he could not let her have the same unless it was for her own use and benefit; that thereupon appellant made the statement aforesaid, and appellee believed the same to be true and relied thereon, and loaned said money to her on the faith of her said statements.

The testimony objected to in the foregoing reason for a new trial is as follows:

"Question by plaintiff's attorney: What was the agreement between you and Mr. Frank Hopkins as to his putting his name on the back of the notes?

"Answer. The understanding was this: After I was convinced that they wanted the money for Mrs. Tombler for a home, that he had explained it to me, I told him there was but one obstacle in the way, that if the parents would die the children would rise and make trouble; and he said: 'To settle this, I will put my name on the notes,

to be called upon at any time in case of any trouble to show the children what this money was used for.'"

It was objected to this evidence that it was an attempt to vary the terms of a written instrument by parol testimony. It would seem rather that the evidence was intended simply to show the nature of the transaction and the capacity in which Hopkins, the brother of appellant, and acting as her agent, put his name on the back of the notes.

Whether parol evidence can be introduced to show the intention of an endorser on a negotiable note, depends on the nature of and circumstances connected with the endorsement. When the endorsement is regular, that is, when the payee first writes his name upon the back of the note, to transfer it to another person, and such other person in like manner endorses it to a third, and so on, the general rule is that parol evidence will not be permitted to modify the legal significance of such endorsement, as against a *bona fide* holder without notice. But there may be exceptions even to this general rule. Parol evidence is admissible to show that a principal endorsed to his agent for the purpose of allowing the latter to use the bill for some special purpose; or that the endorsement was for collection merely; or that it was delivered as an escrow; or that it was for collateral security. Daniel Neg. Inst., section 707, *et seq.*; *Stack* v. *Beach,* 74 Ind. 571, and authorities cited; *Smythe* v. *Scott,* 106 Ind. 245; *Houck* v. *Graham,* 106 Ind. 195, and cases cited; *Lacy* v. *Lofton,* 26 Ind. 324.

It has also been decided that where one not a party to a note places his name on the back thereof, before, or concurrently with, the endorsement by the payee, he is liable as an endorser, but his actual relation to the maker and payee, as between themselves may be shown by parol

evidence, though not so as to affect the rights of the holder.  *Houston* v. *Bruner*, 39 Ind. 376.

So parol evidence may be offered to attack the validity of the contract of endorsement for want of consideration, or for fraud; that it would be inequitable to enforce the contract; that the endorser was agent; or that it was for some particular purpose.  *Spencer* v. *Sloan*, 108 Ind. 183; Edward's Bills and notes, sections 393, *et seq.;* Daniel on Neg. Inst., sections 710, 711.

In *Smythe* v. *Scott*, *supra*, it was said: "Where an endorsement is made by a payee without consideration, or upon some trust arising out of an antecedent transaction, or to accomplish some special purpose, the facts which go to show the transaction may be shown.  This, for the purpose of showing the equities between the parties, and to determine the consideration upon which the endorsement was made."

And, in *Spencer* v. *Sloan*, *supra*, where parol evidence was introduced to show that an endorsement was made as evidence of payment, the court said:  "The inference would seem to be plain that the defendant was entitled to show that when he put his name on the back of the note, it had already been paid, and that his name had been so put on the note at the request of the plaintiff as evidence of such payment."

In the case we are considering, the evidence objected to was introduced to show that Frank Hopkins had not signed his name on the back of the note as endorser, but as witness to the transaction.  We think the evidence was competent.

We have read the evidence, and are of opinion that it fully sustains the findings of the court.

The statute under which appellant seeks to avoid the payment of this debt was enacted for the protection of the rights of married women, and of homes and fami-

lies; and it ought not, on slight technicalities, and still less on misrepresentations, to be allowed to deprive creditors, who are themselves without fault, of the means of collecting what is honestly due them.

The judgment is affirmed.

